UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| YAMEGO SMITH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:18-cv-00462 |
| | ) | Judge Trauger |
| WILSON COUNTY SHERIFF'S OFFICE, et al., | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

Plaintiff Yamego Smith, an inmate at the Wilson County Jail in Lebanon, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983 against the Wilson County Sheriff's Office, Southern Health Partners, the Lebanon Police Department, Ariel Carrillo, Lindsey Gram, Raymond DJ Jones, and Kenneth Matthew. The plaintiff also names two Wilson County Jail employees—Officer Neely and "another unknown Officer"—as defendants in the body of the complaint. (Doc. No. 1 at 12.) The plaintiff also filed an application to proceed *in forma pauperis*. (Doc. No. 2.)

## I. Application to Proceed as a Pauper

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from his *in forma pauperis* application that he lacks sufficient financial resources from which to pay the full filing fee in advance, the plaintiff's application (Doc. No. 2) will be granted. The plaintiff must nonetheless pay the $350.00 filing fee, so the fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

**II.     Initial Review**

The court is required to conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The court must construe a *pro se* plaintiff's complaint liberally, *United States v. Smotherman*, 838 F.3d 736 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

**A.     Factual Allegations**

The plaintiff alleges that, on April 29, 2017, Ariel Carrillo of the Lebanon Police Department ("Lebanon P.D.") tackled him, "violently twisted" his arms behind his back, and handcuffed him. (Doc. No. 1 at 4, 10.) The plaintiff heard a "loud snapping sound." (*Id.* at 10.) Officer Carrillo rolled the plaintiff over, and Carrillo stated, "[Y]ou can't out run me n*****." (*Id.*) Carrillo gave the plaintiff two "citation[s]" and called an ambulance. (*Id.*) At the hospital, the plaintiff was diagnosed with cuts, abrasions, and a dislocated shoulder. (*Id.*) Hospital staff sedated the plaintiff, and he woke up with his arm and shoulder in a brace. (*Id.*) Hospital staff prescribed the plaintiff pain medication, told him to "follow-up on treatment," and released him. (*Id.*) The plaintiff alleges that, for about two months after he was released from the hospital, he was "on the streets . . . healin[g] with a brace on taking [his] med[s]." (Doc. No. 6 at 1.)

On June 26, 2017, the plaintiff was a passenger in a vehicle stopped by the Lebanon P.D., and the police informed him that he had "two warrants[,] one for violation of probation and one for child support." (*Id.* at 2.) Lebanon P.D. then took the plaintiff to the Wilson County Jail. (Doc.

No. 1 at 14; Doc. No. 6 at 2.) At intake, a "Lady Commissioner" asked the plaintiff if he had any disabilities, and he notified her of his dislocated shoulder. (Doc. No. 1 at 14; Doc. No. 6 at 2.) The commissioner told the plaintiff to fill out a sick call request. (Doc. No. 1 at 14.) The commissioner also ignored his statement that he could not be placed on a top bunk, and the plaintiff was put on top bunks "multiple times" because there were not any bottom bunks available. (*Id.*) The plaintiff saw a doctor for the first time on July 26, 2017, when Wilson County Jail Dr. Kenneth Matthew told him that his injury was "costly" and that "there was nothing he could do but prescribe [him] pain meds." (*Id.*) Wilson County Jail nursing staff and Dr. Matthew made this statement to the plaintiff "multiple times . . . for about 11 months." (*Id.*) The plaintiff alleges that he has repeatedly visited nursing staff, filed grievances, and requested an MRI, but Wilson County Jail staff "tell [him] there is nothing wrong with [his] shoulder," and instruct him to put in a sick call request. (Doc. No. 6 at 2.) The plaintiff alleges that Dr. Matthew visits the Jail once a month. (Doc. No. 1 at 14.) Due to the lack of treatment on his injured shoulder, the plaintiff alleges that he continues to experience pain, his shoulder has "healed in [the] wrong location [and] position," and he cannot raise his arm enough to wash under it or apply deodorant. (*Id.*; Doc. No. 6 at 2.)

The plaintiff also alleges that Lindsey Gram and Raymond DJ Jones, two public defenders appointed to represent him in state court, failed to assist him in procuring necessary medical care. (Doc. No. 1 at 11.) Specifically, the plaintiff alleges that Gram was aware of his dislocated shoulder, and somehow "caused [his] incarceration" by ignoring his injury at a "[violation of probation] hearing" on July 31, 2017. (*Id.*) On December 18, 2017, Jones replaced Gram as the plaintiff's court-appointed attorney. (*Id.*) Dr. Matthew allegedly explained the severity of the plaintiff's injury to Jones multiple times, and advised Jones that the plaintiff may need a "furlough

to [the] hospital for surgery." (*Id.*) On some unspecified date, the plaintiff again informed Jones of his injury, and the plaintiff has not "seen or heard" from Jones since. (*Id.*)

On January 21, 2018, the plaintiff alleges, he fought another inmate at the Wilson County Jail. (*Id.* at 12; Doc. No. 9.) Officer Neely then "slam[med the plaintiff] to the ground[,] put[] his knee in [the plaintiff's] back and handcuff[ed] him." (Doc. No. 1 at 12.) An unknown officer "grab[bed the plaintiff's] leg and slam[med his] foot to the ground." (*Id.*) The officers took the plaintiff to medical for treatment, and the plaintiff informed Nurse Linze that his toe "was hurting really bad." (*Id.*) The plaintiff was placed in segregation for approximately one hour, and then officers escorted him back to medical. (*Id.*) The plaintiff underwent an x-ray scan, and an unnamed doctor informed him that he had a broken toe. (*Id.*) The next day, the doctor gave the plaintiff an ice bag and prescribed him pain medication. (*Id.*) The plaintiff alleges that he has not received proper medical treatment for his broken toe, and that it has "grown back crooked." (Doc. No. 8.)

According to the plaintiff, he was then placed in segregation for fighting. (Doc. No. 1 at 13.) Officer Hurst informed the plaintiff that Wilson County Jail staff took some of his property, as well as "legal and non legal paperwork," from his cell while he was in segregation. (*Id.*) Hurst told him "they were holding it as commissary," but the plaintiff believes the officers were "tampering with [his] legal documents." (*Id.*) In a letter the plaintiff sent the court after he filed this action, he states that jail staff opened mail sent to him by the court and taped the envelope back together. (Doc. No. 4.) The plaintiff also stated that jail staff "seem to be getting upset with [his] actions and are opening and copying [his] mail up front." (*Id.*)

**B.    Standard of Review**

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court applies the same standard as

4

under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

    **C.**    **Discussion**

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

    **1.**    **Improper Parties under 42 U.S.C. § 1983**

The plaintiff names the Lebanon Police Department and the Wilson County Sheriff's Office as defendants in this action. "[F]ederal district courts in Tennessee," however, "have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit." *Mathes v. Metro. Gov't of Nashville and Davidson Cty.*, No. 3:10-cv-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting cases). Although the court may liberally construe the plaintiff's reference to these defendants an attempt to hold the City of

5

Lebanon or Wilson County liable for his alleged injuries, doing so would be futile. "A municipality," such as a city or county, "is liable for a constitutional violation when execution of the municipality's policy or custom inflicts the alleged injury." *Jones v. City of Cincinnati*, 521 F.3d 555, 560 (6th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978)). The plaintiff does not allege that a policy or custom of Lebanon or Wilson County caused the alleged constitutional violations. Accordingly, the Lebanon Police Department and the Wilson County Sheriff's Office will be dismissed as parties.

Likewise, the two court-appointed attorneys named as defendants will be dismissed. The plaintiff alleges that Lindsey Gram somehow caused his incarceration by ignoring his injury at a hearing on the violation of his parole. The plaintiff also alleges that Raymond DJ Jones has not been communicative with him, and that Jones failed to act after Dr. Matthew told him that the plaintiff may need a "furlough to [the] hospital for surgery." (Doc. No. 1 at 11.) "[I]t is well-settled that a lawyer representing a client is not a state actor under color of law within the meaning of § 1983[,] . . . even in cases where a public defender has been assigned to represent an indigent defendant." *Kenny v. Bartman*, No. 16-2152, 2017 WL 3613601, at *3 (6th Cir. May 19, 2017) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 318 n.7, 321 (1981)). Thus, the plaintiff fails to state a claim against Gram and Jones under § 1983.

### 2. Officer Carrillo

The plaintiff alleges that Lebanon P.D. Officer Carrillo tackled him, "violently twisted" his arms behind his back, and handcuffed him, causing cuts, abrasions, and a dislocated shoulder. The Fourth Amendment protects a "free citizen's" right to be free from "law enforcement officials us[ing] excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "A 'seizure' triggering the Fourth

Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008) (quoting *Graham*, 490 U.S. at 395 n.10). Here, the plaintiff does not state that Officer Carrillo arrested him, and the plaintiff was not incarcerated as a result of this incident. Nonetheless, Carrillo allegedly placed the plaintiff in handcuffs and issued him two citations. Thus, taking the plaintiff's allegations as true, Carrillo's use of physical force and demonstration of authority clearly constituted a seizure under the Fourth Amendment.

To determine whether an officer used excessive force in effecting a particular seizure, the court uses "an 'objective reasonableness' standard that does not include the underlying intent or motivation of the officer." *Slusher*, 540 F.3d at 455 (quoting *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004)). The court considers several "[r]elevant factors" in evaluating objective reasonableness, including: "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). "[T]he ultimate inquiry is whether the seizure was reasonable under the 'totality of the circumstances.'" *Id.* (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 467 (6th Cir. 2006)).

From the face of the complaint, the full circumstances of the plaintiff's encounter with Officer Carrillo are unclear. At this juncture, however, the court concludes that the plaintiff has stated a Fourth Amendment excessive force claim against Defendant Carrillo.

The plaintiff also alleges that Officer Carrillo's actions were the result of racial profiling because, after he tackled the plaintiff, Officer Carrillo stated "you can't outrun me n*****." (Doc. No. 1 at 10; Doc. No. 6 at 1.) The Equal Protection Clause of the Fourteenth Amendment "provides that '[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.'"

7

*Katz v. Village of Beverly Hills*, 677 F. App'x 232, 237 (6th Cir. 2017) (quoting U.S. Const. amend. XIV, § 1.) "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Deleon v. Kalamazoo Cty. Road Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). At this point in the proceedings, the court concludes that the plaintiff has stated a race-based discrimination claim against Carrillo under the Fourteenth Amendment.

### 3. Medical Treatment at Wilson County Jail

The plaintiff alleges that he has received inadequate medical treatment since his confinement at Wilson County Jail commenced on June 26, 2017, and names Wilson County Jail Dr. Kenneth Matthew as a defendant. He also names Dr. Matthew's alleged employer, Southern Health Partners ("SHP"), as a defendant. Although the plaintiff does not specifically describe what SHP does, the court presumes for the purpose of initial review that SHP is the private entity contracted to provide medical care to prisoners at the Wilson County Jail. The court notes that the Sixth Circuit has specifically held that SHP "act[s] under color of law for purposes of § 1983" because it performs the "traditional state function[]" of providing "medical services to prison inmates." *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015).

The plaintiff checked a box on the complaint form reflecting that he is a pretrial detainee. (Doc. No. 1 at 1.) Both pretrial detainees and convicted prisoners have a right to be free from "cruel and unusual punishment," which is violated "when prison doctors or officials are deliberately indifferent to [their] serious medical needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The Sixth Circuit recently reaffirmed that courts should analyze claims by pretrial detainees and convicted prisoners for denial of adequate medical treatment using the same Eighth

Amendment "deliberate indifference" standard. Id. at 937–38 & n.3. "A constitutional claim for deliberate indifference contains both an objective and a subjective component. The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Dominguez*, 555 F.3d at 550 (quoting *Farmer*, 511 U.S. at 834). "The subjective component, in contrast, requires a plaintiff to 'allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk.'" Id. (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, the plaintiff alleges that hospital staff diagnosed him with a dislocated shoulder on the evening of April 29, 2017, and that he still had this injury when he entered the Wilson County Jail on June 26, 2017. He also alleges that, after a fight with another inmate in January 2018, he sustained a broken toe. At this juncture, the court concludes that these alleged medical needs are sufficiently serious to satisfy the objective component of a deliberate indifference claim. Further, the plaintiff's allegations reflect that Wilson County Jail Dr. Matthew was aware of his medical needs, but deliberately disregarded them. Taking the plaintiff's allegations as true, he has continually requested care from Dr. Matthew and the Wilson County Jail nursing staff, but Dr. Matthew has repeatedly told him that the only treatment he could provide was to prescribe pain medication. Given the severity of the alleged injuries, the plaintiff essentially asserts that pain medication alone is treatment "so woefully inadequate as to amount to no treatment at all." *Richmond*, 865 F.3d at 939 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). Accordingly, the court concludes that the plaintiff has stated a claim against Dr. Matthew for deliberate indifference to his serious medical needs.

As to Defendant Southern Health Partners, private entities acting under color of state law cannot be held vicariously liable for the actions of their employees. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citations omitted). For SHP to be liable under § 1983, the plaintiff must allege that it had a "policy or custom" that was "the moving force behind" the alleged deliberate indifference to his serious medical needs. *Id.* (quoting *Miller v. Sanilac Cty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Here, the plaintiff alleges that Dr. Matthew repeatedly told him that his dislocated shoulder injury was "costly," and that he could only prescribe pain medication. Liberally construing the complaint in the plaintiff's favor, the court concludes that Dr. Matthew's alleged refusal to provide necessary medical treatment for financial reasons constitutes a policy or custom of denying medical care because it is too expensive. For the purpose of initial review, the court concludes that the plaintiff has stated a deliberate indifference claim against SHP.

### 4. Dismissal of Remaining Claims

The plaintiff also asserts a claim against two Wilson County Jail staff members for using excessive force to break up a fight he was having with another inmate. As a pretrial detainee, the Due Process Clause of the Fourteenth Amendment protects the plaintiff from the "unnecessary and wanton infliction of pain," *Brown v. Chapman*, 814 F.3d 447, 465 (6th Cir. 2016) (citations omitted), including the right to be free from excessive force. *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 538 (6th Cir. 2015) (discussing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). "[W]hen assessing pretrial detainees' excessive force claims [the court] must inquire into whether the plaintiff shows 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Coley*, 799 F.3d at 538 (quoting *Kingsley*, 135 S. Ct. at 2473). This inquiry should "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e]

judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

Here, the court concludes that the plaintiff has failed to state an excessive force claim against these two officers. In responding to a fight between the plaintiff and another inmate, Officer Neely allegedly slammed the plaintiff to the ground, put his knee in the plaintiff's back, and handcuffed the plaintiff, while another unknown officer slammed the plaintiff's foot into the ground. Even if the plaintiff sustained a broken toe as a result of this incident, it was not objectively unreasonable for these two officers to bring the plaintiff to the ground and restrain him in the alleged manner. These officers had a legitimate interest in breaking up the plaintiff's fight with another inmate "to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 135 S. Ct. at 2473. Further, in an unpublished opinion issued after *Kingsley*, the Sixth Circuit explained that "an official's decision to use force to control a prison disturbance is entitled to deference." *Ayala-Rosales v. Teal*, 659 F. App'x 316, 321 (6th Cir. 2016) (citing *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010)). Thus, Officer Neely and the other unknown officer will be dismissed as parties.

The plaintiff also fails to state a claim based on the taking of some of his property from his cell while he was in segregation. The alleged "deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 533–36 (1984)). The Sixth Circuit Court of Appeals has held that Tennessee "provide[s] an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985)). The plaintiff does not allege that he

attempted to avail himself of this post-deprivation remedy, or that it was inadequate in any way. Thus, the plaintiff's property-deprivation claim will be dismissed.

Finally, the plaintiff asserts a claim based on conclusory allegations that unidentified officers were "tampering" with his legal paperwork (Doc. No. 1 at 13) and were "opening and copying [his] mail up front" (Doc. No. 4). Even under the liberal construction afforded to *pro se* plaintiffs, the court "is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a *pro se* prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"); *see also Salem v. Warren*, 609 F. App'x 281, 284 (6th Cir. 2015) (affirming the district court's decision to grant summary judgment on individual-capacity claims for opening a prisoner's mail where the prisoner did not "produce[] any evidence suggesting *who* should be held liable") (emphasis in original). To the extent that the plaintiff alleges these unidentified officers interfered with his access to the courts, he must allege "the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost." *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (explaining the "unique pleading requirements" of access-to-courts claims). He has not done so here. Accordingly, the plaintiff fails to state a claim regarding his legal paperwork and mail.

## III. Conclusion

For these reasons, the plaintiff's Fourth Amendment excessive force claim and Fourteenth Amendment race-based discrimination claim against Ariel Carrillo will be referred to the

Magistrate Judge for further proceedings consistent with the accompanying order, as will the plaintiff's Eighth Amendment claims against Dr. Kenneth Matthew and Southern Health Partners for deliberate indifference to his serious medical needs. All other claims and defendants will be dismissed with prejudice. The plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) will also be granted.

ENTER this 18th day of July 2018.

_____
ALETA A. TRAUGER
United States District Judge